```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

_____

WILLIAM AYERS,

        Plaintiff,

v.                                                      DOCKET NO. 04-cv-10137-FDS

C. P. BOURG, INC.

        Defendant.
_____

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

### I. INTRODUCTION

The defendant seeks to deprive the plaintiff of probative information, including conversations, relating to the decision not to pay him money owed in commissions and the decision to terminate him. To do so, it claims an attorney-client privilege. William Hagan served as a vice president, performing most human resource functions and, at times, as counsel. Because Mr. Hagan performed in his human resource business capacity when consulting about the plaintiff, the defendant's claim of privilege is unavailing. The Court should thus order the previous deponents and Mr. Hagan to testify about the circumstances surrounding the decision not to pay the plaintiff money owed in commissions and plaintiff's termination, including the facts surrounding the claimed reduction in force.

Even if the Court were to find that the information is privileged, the Court should find that the privilege has been waived and order discovery of the information sought by the plaintiff.

## II. FACTS AND PROCEDURAL POSTURE

Plaintiff William Ayers ("Mr. Ayers") brings an action for equitable relief, compensatory and liquidated damages against C.P. Bourg, Inc. ("C.P. Bourg") under the Age Discrimination in Employment Act ("ADEA") and for compensatory and treble damages under the Massachusetts laws prohibiting untimely and non-payment of wages, G.L. c. 149 § 148. Mr. Ayers alleges that while employed at C.P. Bourg, he was subjected to discriminatory actions and omissions by the defendant culminating in a discriminatory termination on account of his age and a wrongful termination and a denial of commissions.[1]

On April 6 and April 15, 2005, the plaintiff took depositions of various current and former corporate officers. The plaintiff deposed Richard Trapilo, C.P. Bourg's Executive Vice President, who testified that he approved the plaintiff's termination and participated in the decision not to pay Mr. Ayers' full commission on a sale Mr. Ayers had been working on for many months. The plaintiff also deposed James Tressler, the plaintiff's immediate supervisor.

During the depositions, the plaintiff sought information including communications about the circumstances surrounding his alleged wrongful treatment, discriminatory termination (allegedly part of a reduction in force) and the wrongful denial of commissions. Essentially all of those communications were purported to be with or in the presence of William Hagan, the Vice President who was responsible for human resource matters at C.P. Bourg. Mr. Hagan is also a lawyer. The defendant

---

[1] The plaintiff has also filed a motion to amend his complaint to add a claim of a bad faith termination in violation of the covenant of good faith and fair dealing on this date.

has claimed that all conversations and communications that were with or in the presence Mr. Hagan are attorney-client privileged.  The defendant's counsel also represented to the plaintiff's counsel that he would similarly object and instruct Mr. Hagan not to answer any similar questions posed to him.  As a result, the plaintiff has no information from the defendant's perspective regarding the specifics of any decision made as to him or his employment.  The defendant asserts a claim of privilege despite its waiving any potential claim of privilege by putting these communications at issue through its responses to the plaintiff's interrogatories.  The plaintiff therefore seeks an order of the Court allowing him to depose Mr. Hagan regarding pre-litigation conversations and further depose Mr. Trapilo and Mr. Tressler regarding those conversations.

### III.  ARGUMENT

The plaintiff seeks probative information relating to his employment and termination there from.  The deposition questions which the defendant failed to answer at the instruction of counsel seek information relating to the decision to deny Mr. Ayers commission, the circumstances surrounding his termination as a part of a purported reduction in force, what the defendant knew and when they first knew it, including information relating to any claimed investigation of the failure to pay commission.  This information is necessary to the prosecution of Mr. Ayers' claims and should be ordered produced by the Court.

***A.  Communications relating to personnel issues with the human resources executive who is also a lawyer are not attorney-client privileged.***

While it is true that a corporation possesses an attorney-client privilege, Upjohn Co. v. United States, 449 U.S. 383 (1981), the burden of proving its existence of the privilege in a given situation is on the party asserting the privilege. U.S. v. Bay State Ambulance and Hosp. Rental Service, Inc., 874 F.2d 20, 28 (1st Cir. 1989).

The Supreme Court has declined to adopt any "bright line" standard to determine when a corporation may invoke the privilege where corporation lawyers serve in dual business and legal roles. See Upjohn 449 U.S. at 396-97. One certain holding of Upjohn is that for the attorney-client privilege to attach, the employees of the corporation must have made the communication with the distinct purpose and intent of seeking legal advice and must be related to matters within the scope of the communicating employee's corporate duties. Id. at 394-96.

It is uncontroversial that if a communication sought to be protected by the privilege contains both legal and business advice, the privilege only applies to the legal opinions or advice and that all business-related communications do not enjoy protection of the attorney-client privilege. Id. at 394; See Camden v. Maryland, 910 F. Supp. 1115 (D. Md. 1996). The attorney-client privilege does not protect disclosure of the underlying facts communicated with the attorney. See Upjohn, 449 U.S. at 395-96. A party likewise cannot conceal a fact merely by revealing it to his lawyer. See id., at 396 (collecting cases).

Because of the dual roles of executives who may also be lawyers such as Mr. Hagan, Courts increasingly uphold a disallowance of claims of privilege. As one court noted, the "in-house counsel's law degree and office are not to be used to create a 'privileged sanctuary for corporate records.'" United States v. United Shoe

Machinery Corp., 89 F. Supp. 357 (D. Mass. 1950).  For example, routine business matters and communications will not be deemed privileged simply because an attorney is present.  See e.g., F.C. Cycles International, Inc. v. FILA Sport, 184 F.R.D. 64 (D. Md. 1998).   When an employee is wearing their proverbial business hat, even if he is an attorney, communications will not be protected.

      The defendant tries to cast Mr. Hagan as performing exclusively legal duties to shroud all communications with him and in his presence as privileged.  Mr. Hagan held the title of Vice President in addition to counsel and performed dual functions.  The facts show that much of what Mr. Hagan did at C. P. Bourg was not as counsel, particularly his performance of the human resource and personnel functions which are implicated here.  (See November 26, 2002 letter from William Hagan to Buddy Ayers attached at 1.)

      Mr. Hagan was "responsible for the personnel of the company in the normal H.R. capacity" and was consulted in that capacity regarding salaries, insurance, benefits and performance issues.  (Deposition of Robert Trahan ("Trahan Dep.") at 7, 8, 23-26 attached at 2; Deposition of Richard Trapilo ("Trapilo Dep." at 121 attached at 3.).)  Mr. Hagan's business functions also included reviewing performance appraisals for all employees for whom appraisals were done.  (Trahan Dep. at 28; Trapilo Dep. at 153-55.) He was responsible for such personnel issues as selecting and monitoring employee benefits, selecting and monitoring employee insurance plans, monitoring employee sick and vacation time, taking and investigating workers' compensation claims, maintaining and keeping in his possession employee personnel files.  (Trahan Dep. at 30; Trapilo Dep. at 137-155))  At a time he also

5

performed other business functions including managing the customer service department (Id.)  Significantly, Mr. Hagan was the person responsible for the timely and appropriate payment of wages and commissions.  (Trahan Dep. at 30; Trapilo Dep. at 137-155)  He was also consulted regarding the alleged company restructurings on or around the time the plaintiff was laid off.  (Trapilo Dep. at 218-19.)

   Courts are becoming more expansive in their definition of what constitutes a business matter.  A federal Court has held that communications by in-house lawyers containing recommendations relating to adoption and modification of contract provisions are not privileged.  Georgia Pacific v. GAF Roofing Mfg. Corp., 1996 WL 29392 (S.D.N.Y. 1996).  The Court found that the contract negotiations and communication regarding those negotiations with corporate executives was not an exercise of "a lawyer's traditional function," and that the lawyer, instead, was "acting in a business capacity."  Id. at *4.  Relying on similar reasoning, an appellate Court in Maryland has also found no privilege in counsel's communications to a collection agency retained to collect a corporate debt.  See, E.I. duPont de Nemours & Co. v. Forma-Pak, Inc., 351 Md. 396 (1998).  Over the asserting party's objection, the Court ordered disclosure of communications between corporate counsel and the collection agency which were passed on to the law firm eventually retained to file suit in the matter.  Id.

   Even more so here, because he was the human resources executive on site Mr. Hagan's personnel functions were not traditionally legal functions.  When consulted about personnel issues relating to Mr. Ayers and the corporate

restructuring Mr. Hagan performed business functions that were not traditionally legal.  Defendant may therefore not invoke the attorney-client privilege. The communications sought here relating to Mr. Ayers were also prior to any anticipated litigation and do not enjoy the privilege.  The defendant cannot show that the communications were made for the purpose and intent of seeking legal advice. Nonetheless, each time Mr. Trapilo was asked about conversations relating to Mr. Ayers he was instructed by counsel not to answer.

In particular, Mr. Trapilo was asked about factual information relating to the national sales account that belonged to Mr. Ayers during his tenure and is a part of the subject of this litigation.  Each time, he was instructed that he could not answer based on attorney-client privilege.  (Trapilo Dep. at 67-73.) Mr. Trapilo was also asked for factual information relating to the letter sent to Mr. Ayers by Mr. Hagan in which Mr. Hagan discusses a sale to a national account and the decision not to pay Mr. Ayers a full commission on that sale.  Mr. Hagan represented in that letter that "we reviewed your involvement with the customer, the sales cycle," and "what the company has done in similar situations".  Mr. Trapilo testified that he was involved in the decision not to pay Mr. Ayers a commission and was aware of the letter. Nevertheless, each time he was asked for factual information supporting the assertions in Mr. Hagan's letter he was instructed by counsel not to answer, asserting the attorney-client privilege.  (Trapilo Dep. at 74-79).  When asked at deposition, Mr. Trapilo could not even remember who initiated the conversation.  (Trapilo Dep. at 239.)  Thus by its own admission the defendant cannot meet its burden to show that

its communications for which it now claims privilege were for the purpose or intent of seeking legal advice.

Perhaps most significantly, facts provided to counsel which are claimed to support a business decision to engage in a workforce reduction have been held to be not protected. Freiermuth, v. PPG Industries, Inc., 218 F.R.D. 694, 699-700 (N.D. Ala. 2003). However, each time Mr. Trapilo was asked about the alleged restructuring of the C.P. Bourg workforce he was instructed by counsel not to answer on the basis that he consulted with or had conversations in the presence of Mr. Hagan. (Trapilo Dep. at 213-18.) Counsel instructed Mr. Trapilo that he could not even answer questions relating to his knowledge that Mr. Ayers exceeded his sales goals for the year prior to his termination because that fact was allegedly learned by him in the presence of counsel. (Trapilo Dep. at 171-72.) Defendant bears the burden of showing if these pre-litigation communications with the senior human resources executive, including several which were pre-termination, were sought solely as legal advice. If the defendant is unable to do so, this Court should order that the plaintiff be allowed to inquire into the substance of these communications.

### ***B. The defendant has waived any attorney client privilege and the communications should be ordered disclosed.***

Alternatively, if the Court were to find that the communications between Mr. Hagan and other employees were categorically privileged; such privilege was waived because the communications were placed at issue and portions disclosed to the plaintiff by the defendant.

The defendant has impliedly waived any privilege it might have enjoyed. "'[T]he courts have identified a common denominator in waiver by implication: in each

8

case, the party asserting the privilege placed protected information in issue for personal benefit through some affirmative act, and the court found that to allow the privilege to protect against disclosure of that information' would have been unfair to the opposing party.  In re Keeper of the Records, No. 03-1726 (1st Cir. 2003) citing 3 Weinstein, supra § 503.41[1]. See also Sedco Int'l, S.A. v. Cory, 683 F.2d 1201, 1206 (8th Cir. 1982) (noting that courts have found waiver by implication when a client (i) testifies concerning portions of an attorney-client communication, (ii) places the attorney-client relationship itself at issue, or (iii) asserts reliance on an attorney's advice as an element of a claim or defense)".

    Invoking advice of counsel as a defense such as has been done here waives the claimed privilege.  See, e.g., United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991). In re Keeper of the Records, No. 03-1726  "Implying a subject matter waiver in such a case ensures fairness because it disables litigants from using the attorney-client privilege as both a sword and a shield."   Id.  Mr. Ayers was allegedly terminated due to a restructuring of the workforce.  When asked about the restructuring Mr. Trapilo solely claimed to be following advice of counsel:

    Q.   Did anyone offer you any criteria for instituting this restructuring?

    A.   Those are conversations that I had with our general counsel, Mr. Hagan.  So Mr. Hagan offered you criteria?

    MR. BADGER:  I am going to instruct you not to reveal the details of the conversation with Mr. Hagan.

    THE WITNESS:  I cannot answer that question.

    Q.   (By Ms. Garrow) Are there any published criteria?

    MR. BADGER:  Objection to the form.

    Q.   (By Ms. Garrow) Did you consult any written material?

    MR. BADGER:  Other than communications with Mr. Hagan, you were permitted to answer that question.

    THE WITNESS:  I had conversations with Mr. Hagan.

    Q.   (By Ms. Garrow)  Was there any written materials?

    MR. BADGER:  Again, other than written communications from Mr. Hagan, you can answer that.

    THE WITNESS:  I had communications with Mr. Hagan. . . .

    Q.   (By Ms. Garrow)  Did you have any discussions -- well, with whom did you discussed criteria -- if there were was criteria discussed between you and Mr. Hagan, with whom did you have those discussions?

    MR. BADGER:  I'm going to instruct you not to answer that question. (Trapilo Dep. at 213-15.)  Relying on the advice of counsel as a defense to the illegality of the alleged reduction in force waives any privilege and the Court should order conversations with Mr. Hagan about the restructuring disclosed.

    Disclosure of privileged communications to a non-client waives attorney-client privilege. "[Subsequent] disclosure [to a third party] is viewed [either] as an indication that confidentiality is no longer intended or as a waiver of the privilege."  "Where privilege is claimed and the opponent alleges a specific disclosure, the burden of proof is upon the claimant to show nondisclosure wherever that is material to the disposition of the claim." <u>U.S. v. Massachusetts Institute of Technology,</u> 129 F.3d 681, 686 (C.A.1 (Mass.), 1997).

Communications regarding the non-payment of commission to Mr. Ayers were disclosed to Mr. Ayers and the privilege was waived. In his November 26, 2002 letter to Mr. Ayers, Mr. Hagan reveals that he, Mr. Trapilo and Mr. Tressler "reviewed your involvement with the customer, the sales cycle, and what the company has done in similar situations and are of the opinion . . ." (November 26, 2002 letter from Mr. Hagan to Mr. Ayers attached at 1.) Mr. Trapilo and Mr. Tressler confirmed that they had such communications with Mr. Hagan (Trapilo Dep. at 75-79; Deposition of James Tressler "Tressler Dep." at 75-77 attached at 4.) Mr. Hagan further discloses the substance of these communications when in his December 6 2002 letter he asserts that "Rick Trapilo and Jim Tressler deny any knowledge that the VNL sale was imminent and any suggestion that this sale led to your termination. (December 6, 2002 letter from Mr. Hagan to Mr. Ayers attached at 5.) Defendant put these communications at issue when defending against Mr. Ayers claim to commission, particularly in the December 6 2002 letter where he specifically denies that claim.

## IV.  CONCLUSION

Based on the foregoing the plaintiff requests that the Court order the defendant to testify and provide information regarding certain communications relating to his claims.

                          Respectfully submitted,
                          WILLIAM AYERS
                          By his Attorney,

Dated:  May 19, 2005           /s/ Suzanne Garrow
                                        Suzanne Garrow BBO#  636548
                                        Heisler, Feldman & McCormick, P.C.
                                        1145 Main Street, Suite 508
                                        Springfield, MA 01103
                                        (413) 788-7988

## CERTIFICATE OF SERVICE

    I hereby certify that a true and accurate copy of the above was served on the attorneys of record for the defendant via electronic and first class mail on

                                        /s/ Suzanne Garrow
                                          Suzanne Garrow