UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM AYERS,<br>     Plaintiff<br><br>V.<br><br>C.P. BOURG, INC.,<br>     Defendant | CIVIL ACTION NO. 04-10137-FDS |

## OPPOSITION TO THE PLAINTIFF'S MOTION TO COMPEL

Now comes the Defendant, C.P. Bourg, Inc. ("C.P. Bourg"), in opposition to the Plaintiff's Motion to Compel and asks this Court to deny the Plaintiff's Motion. As grounds for this motion, C.P. Bourg states that communications with C.P. Bourg's Vice President and General Counsel William Hagan are subject to the attorney-client privilege as they consisted of consultation for purposes of obtaining legal advice regarding (1) post-termination claims made by the Plaintiff for commissions allegedly owed to him and (2) the legal issues raised by conducting company-wide layoffs. Further, the Plaintiff has misstated the factual and legal positions of the Defendant in an effort to claim privileged communications have been put "at issue" in this matter. For these reasons, as more fully set fort below, the Defendant asks the Court to dismiss the Plaintiff's Motion to Compel.

## BACKGROUND FACTS

C.P. Bourg is a manufacturer and distributor of post-press binding and finishing equipment. C.P. Bourg's U.S. operations are based in New Bedford, Massachusetts. The company suffered a series of financial setbacks earlier in the decade, exacerbated by the

September 11, 2001 tragedy. Over a period from January 1, 2001 through November 2003, C.P. Bourg reduced its total employee headcount from ninety-five (95) employees to sixty-two (62) employees through a series of restructurings, layoffs and non-replacement of vacated positions. The Plaintiff was laid off on October 24, 2002.

C.P. Bourg employed William Hagan, Esq., as Vice President and General Counsel. Mr. Hagan's duties included the provision of legal advice on a wide variety of business areas, including employment issues. Mr. Hagan also assisted C.P. Bourg by overseeing certain operational areas.

After his termination, Mr. Ayers contacted C.P. Bourg to inquire about a commission he contended he was owed. C.P Bourg managers consulted with Mr. Hagan about this claim. C.P. Bourg has asserted a privilege regarding the contents of these communications. C.P. Bourg Executive Vice President and General Manager Richard Trapilo also acknowledged having conversations with Mr. Hagan regarding criteria used to evaluate layoffs occurring throughout the company at this period. C.P. Bourg has also asserted an attorney-client privilege for the substance of these conversations.[1]

## ARGUMENT

The Plaintiff concedes the existence of a corporate attorney-client privilege and acknowledges such a privilege may exist even where a corporate employee serves in a dual capacity. Upjohn v. United States, 449 U.S. 383, 396-97 (1981); and United States v. Baystate Ambulance and Hosp. Rental Service, Inc., 874 F.2d 20, 28 (1st Cir. 1989).

---

[1] Contrary to the Plaintiff's contention, C.P. Bourg has not asserted attorney-client privilege regarding inquiries into details of business dealings with customers unrelated to the Plaintiff's claims. Instructions not to answer inquires on that topic were raised because they concern sensitive business arrangements wholly unrelated to the Plaintiff's claims.

Contrary to the Plaintiff's contention, however, the two areas where the Defendant has asserted an attorney-client privilege are anything but "routine business matters." See F.C. Cycles Int'l Inc. v. FILA Sport, 184 F.R.D. 64 (D. Md. 1998). After his termination, Mr. Ayers made a claim for commissions he contends he was owed. Mr. Hagan consulted with C.P. Bourg managers seeking legal advice regarding how to respond. A demand for payment by a terminated employee cannot be defined as routine, even if litigation has not commenced. See Foster v. Hall, 29 Mass. 89, 97 (1831) (protected communication not limited to litigation but includes "communications made by one to his legal advisor ... when the object is to get his legal advice and opinion as to legal rights and obligations"). Similarly, communications with Mr. Hagan regarding the legal impact of selections for layoffs fall outside the routine course of business.

The Plaintiff's reliance on the Northern District of Alabama's decision in Freiermuth v. PPG Industries, Inc., 218 F.R.D. 694 (N.D. Ala. 2003) is grossly misplaced. The Freiermuth decision (a copy of which is attached hereto) deals solely with an assertion of privilege over a document containing only the names of employees who had been terminated and their positions in the company.[2] The case does not address any issues of verbal communications with counsel on the topic of legal advice regarding layoffs.

Also contrary to the Plaintiff's contention, no assertion of privilege was made as to facts underlying communications with counsel. To the extent individual deponents had knowledge on a topic, no assertion of privilege was made as to questions regarding such knowledge. Assertions of privilege were made only as to the communications these witnesses had with Mr.

---

[2] C.P. Bourg actually produced a comparable document identifying dozens of C.P. Bourg employees who had been laid off, terminated or resigned. Plaintiff's counsel questioned C.P. Bourg's Executive Vice President and General Manager, Richard Trapilo, about this document in excruciating detail. No assertion of privilege was made regarding this document.

Hagan. For example, the Plaintiff questioned each deponent about their knowledge regarding a sale Mr. Ayers claimed he had made. The only assertion of privilege concerned the questions asking what those witnesses said to Mr. Hagan on the topic. This is echoed in correspondence that the Plaintiff contends constituted a waiver of attorney-client privilege. In correspondence with Mr. Ayers, Mr. Hagan notes only that managers had no knowledge supporting Mr. Ayers' claims. Mr. Ayers has been in no way thwarted in his efforts to ask those managers about the state of their knowledge on the topic.

Finally, the Plaintiff makes an unsupported contention that C.P. Bourg is relying on an advice of counsel defense concerning Mr. Ayers' claims for age discrimination and failure to pay wages. C.P. Bourg does not raise such a defense in this matter and, under the facts at issue, such a defense does not appear to be applicable.

As communications at issue in this matter were with counsel, regarding non-routine matters and for the purpose of securing legal advice, the communications are properly classified as privileged. As such, the Defendant asks that the Court deny the Plaintiff's Motion to Compel.

Respectfully submitted,

C.P. BOURG, INC.

By its attorneys,

_____
Richard C. Van Nostrand, Esq.
BBO #507900
Michael D. Badger, Esq.
BBO #633915
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax:   (508) 791-8502

Dated: June 2, 2005

## CERTIFICATE OF SERVICE

I, Michael D. Badger, hereby certify that I have this day served a copy of the foregoing document, by mailing a copy, first class mail, postage prepaid, to Suzanne Garrow, Esq., Heisler, Feldman & McCormick, P.C., 1145 Main Street, Suite 508, Springfield, MA 01103.

_____
Michael D. Badger, Esq.

Dated: June 2, 2005

EXHIBIT A

LEXSEE 218 FRD 694

GEORGE FREIERMUTH, Plaintiff, vs. PPG INDUSTRIES, INC., Defendant.

Civil Action No. CV-03-S-1542-NE

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA, NORTHEASTERN DIVISION

218 F.R.D. 694; 2003 U.S. Dist. LEXIS 23248; 57 Fed. R. Serv. 3d (Callaghan) 108

October 31, 2003, Decided
October 31, 2003, Filed

**DISPOSITION:** [**1] Plaintiff's second motion to compel granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In an employment case, plaintiff moved to compel production of a document described in defendant's privilege log. Defendant asserted that the self-critical analysis, attorney-client, and work product privileges applied to the document.

**OVERVIEW:** The document consisted of two sample reduction in force worksheets and a completed worksheet, which included information about plaintiff and other employees or former employees. The completed worksheet listed job titles, dates of hire, performance ratings, indications of discipline or attendance problems, and a rank for each employee. The document did not appear to contain any mental impressions or analysis by counsel. The court declined to recognize the self-critical analysis privilege in the employment context. In any event, the document did not satisfy the requirements of the self-critical analysis privilege, which was inapplicable to objective factual or statistical information. Nor did the attorney-client privilege apply to the document; there was no marking or notation indicating that the document was intended to be kept confidential and no indication of who may have had access to the document. Also, the attorney-client privilege did not protect the disclosure of facts underlying a business decision. The work product doctrine did not apply because there was no indication that the document was prepared in anticipation of litigation.

**OUTCOME:** Plaintiff's motion to compel was granted.

**CORE TERMS:** self-critical, reduction, attorney-client, worksheet, confidential, reduction in force, privileged, workforce, motion to compel, legal advice, work product, disclosure, memo, log, anticipation of litigation, business decision, facts supporting, primary purpose, self-evaluation, recipients, discovery, waived, work product doctrine, accurately, ratings, stamp, absence of evidence, abuse of discretion, self-evaluative, collecting

**LexisNexis(R) Headnotes**

*Evidence > Privileges > Self-Critical Analysis Privilege*
[HN1] The self-critical analysis privilege protects from discovery certain critical self-appraisals.

*Evidence > Privileges > Self-Critical Analysis Privilege*
[HN2] The United States Court of Appeals for the Eleventh Circuit has yet to address the issue of whether the self-critical analysis privilege should be recognized, but the circuit courts of appeals presented with the question have refused to do so. The district courts are split on the issue. In the context of employment law, however, many federal district courts have rejected the privilege.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*
*Evidence > Privileges*

Case 4:04-cv-10137-FDS    Document 26    Filed 06/02/2005    Page 7 of 13

Page 2
218 F.R.D. 694, *; 2003 U.S. Dist. LEXIS 23248, **;
57 Fed. R. Serv. 3d (Callaghan) 108

[HN3] Privileges are not lightly created nor expansively construed, for they are in derogation of the search for truth. The fundamental principle that the public has a right to every man's evidence leads to the conclusion that any asserted privilege must be "strictly construed." Although Fed. R. Evid. 501 allows development of rules of privilege on a case-by-case basis, a court treads cautiously when being asked to recognize a new privilege.

*Evidence > Privileges > Self-Critical Analysis Privilege*
[HN4] The United States District Court for the Northern District of Alabama, Northeastern Division, declines the invitation to recognize a self-critical analysis privilege in the employment context.

*Evidence > Privileges > Self-Critical Analysis Privilege*
[HN5] Courts recognizing the self-critical analysis privilege have established the following criteria: (1) the information must result from a critical self-analysis undertaken by the party seeking protection; (2) the public must have a strong interest in preserving the free flow of the type of information sought; (3) the information must be of the type whose flow would be curtailed if discovery were allowed; and (4) no document will be accorded a privilege unless it was prepared with the expectation that it would be kept confidential. The self-critical analysis privilege does not apply to objective factual or statistical information, but only protects subjective analysis designed to have a positive societal effect.

*Evidence > Privileges > Attorney-Client Privilege*
[HN6] The purpose of the attorney-client privilege is to encourage open and complete communication between a client and his attorney by eliminating the possibility of subsequent compelled disclosure of their confidential communications.

*Evidence > Privileges > Attorney-Client Privilege*
*Evidence > Procedural Considerations > Burdens of Proof*
[HN7] The party invoking the attorney-client privilege has the burden of proving that it applies.

*Evidence > Privileges > Attorney-Client Privilege*
[HN8] To support a claim of attorney-client privilege, a defendant must show the following: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is the member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Evidence > Privileges > Attorney-Client Privilege*
[HN9] To determine if a particular communication is confidential and protected by the attorney-client privilege, a defendant must prove the communication was (1) intended to remain confidential and (2) under the circumstances was reasonably expected and understood to be confidential. An affidavit containing mere conclusory statements that a document was prepared for the purpose of obtaining legal advice will not suffice in meeting the defendant's burden.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*
[HN10] While it is true that a mere stamp is insufficient to cloak an otherwise unprivileged document, absence of such a designation cannot be overlooked by a court.

*Evidence > Privileges > Waiver of Privilege*
*Evidence > Privileges > Attorney-Client Privilege*
[HN11] The burden is upon the party asserting privilege to show that any attorney-client privilege has not been waived.

*Evidence > Privileges > Attorney-Client Privilege*
[HN12] The attorney-client privilege does not protect the disclosure of the underlying facts by those who communicated with the attorney. Courts have noted that a party cannot conceal a fact merely by revealing it to his lawyer. While a memorandum analyzing the legal risk of a proposed reduction in force would be privileged, the facts provided to counsel which support a business decision to engage in a workforce reduction are not protected.

*Evidence > Privileges > Attorney-Client Privilege*
[HN13] It is a sound practice and quite customary for companies to have counsel review a proposed reduction-in-force list prior to implementation. That practice does not cloak the facts supporting a reduction in force in attorney-client privilege. Whether to engage in a reduction in force is not a legal decision--it is a business decision, which may have legal ramifications.

*Civil Procedure > Disclosure & Discovery > Work Product*
[HN14] The work product doctrine, first established by the United States Supreme Court in Hickman v. Taylor and now codified in Fed. R. Civ. P. 26(b)(3), provides qualified protection to documents and tangible things

Case 4:04-cv-10137-FDS   Document 26   Filed 06/02/2005   Page 8 of 13

Page 3

218 F.R.D. 694, *; 2003 U.S. Dist. LEXIS 23248, **;
57 Fed. R. Serv. 3d (Callaghan) 108

prepared in anticipation of litigation or for trial by or for a party, or by or for a party's representative. Fed. R. Civ. P. 26(b)(3). Documents that would have been prepared whether or not an attorney was sent a copy, are not protected from disclosure on the basis of attorney-client or work product privilege.

***Civil Procedure > Disclosure & Discovery > Work Product***
***Evidence > Procedural Considerations > Burdens of Proof***
[HN15] The burden of establishing that a document is work product is on the party who asserts the claim.

**COUNSEL:** For GEORGE . FREIERMUTH, plaintiff: Rebekah Keith McKinney, WATSON JIMMERSON GIVHAM MARTIN & MCKINNEY PC, Henry F Sherrod, III, HENRY F SHERROD, III, PC, Florence, AL.

For PPG INDUSTRIES, INC, defendant: John J Coleman, III, Kathryn L Morris, BURR & FORMAN LLP, Birmingham, AL.

**JUDGES:** Lynwood Smith, United States District Judge.

**OPINIONBY:** C. Lynwood Smith

**OPINION:**

[*695] **MEMORANDUM OPINION**

This action is before the court upon plaintiff's second motion to compel (doc. no. 10). Plaintiff seeks disclosure of a document described as a "memo" in a privilege log attached as Exhibit 1 to plaintiff's second motion to compel. Defendant filed its response on October 8, 2003, arguing the applicability of three privileges asserted in its privilege log: self-critical analysis; work product; and attorney-client. Defendant attached to its [*696] response an affidavit from its equal employment manager, Peter Garber, who stated that the non-disclosed documents were used for two purposes:

> a. For the purpose of enabling myself and others in Human Resources to seek legal advice to determine what legal risks, if any, the company may face if it goes forward with the [**2] Reduction in Force decision, and whether the Reduction in Force decision could be regarded as unlawful in any respect; and
>
> b. For self-critical purposes to determine whether PPG is meeting its equal employment policy and accurately applying its Reduction in Force policy. n1

   n1 Defendant's Response to Plaintiff's Second Motion to Compel, Exhibit 2 (doc. no. 12).

Because of the lack of sufficient detail in the privilege log n2 and in defendant's response for the court to discern whether the asserted privileges applied, the court ordered the document to be filed under seal for an *in camera* inspection.

   n2 A copy of defendant's privilege log is attached to the end of this Memorandum Opinion.

**I. THE "MEMO"**

Without revealing any information that arguably is confidential or privileged, a brief description of the document [**3] at issue is necessary in order to explain the court's analysis of the applicability of the three asserted privileges. The document at issue consists of three pages bearing Bates stamp numbers PRIV 000001, PRIV 000002, and PRIV 000003, respectively. Each page reflects the title "Reduction in Force Worksheet." None of the pages contain any indication whatsoever that they are or were considered to be "confidential" or "privileged." The last two pages -- PRIV 000002 and PRIV 000003 -- are sample worksheets, while the first page -- PRIV 000001 -- is a completed worksheet that bears the names of seven employees or former employees of defendant, including the plaintiff. The completed worksheet, PRIV 000001, bears the date 3/31/02, contains mostly type-written information in chart form, and contains some handwritten markings. The completed worksheet lists for each of the seven employees or former employees their respective job titles, dates of hire, performance ratings for the years 1999 through 2001, success factor ratings for five categories, a computation of the success factor average, overall average, indication of discipline or attendance problems, and a rank. The worksheet also indicates [**4] for the first four persons listed -- birth dates, race, and gender -- characteristics which appear to have been intended to be added *after* the aforementioned ratings.

Counsel's choice to describe this document, not by its actual title, but as a "memo" is questionable at best, and mendacious at worst. n3 The document does not appear to contain any mental impressions or analysis by counsel. It appears to merely contain facts that were accumulated on each individual placed on the worksheet.

218 F.R.D. 694, *; 2003 U.S. Dist. LEXIS 23248, **;
57 Fed. R. Serv. 3d (Callaghan) 108

n3 The word "memo" has a distinct connotation, particularly in the legal arena. *See, e.g.,* Black's Law Dictionary 984 (6th ed. 1990) where "memorandum" is defined as:

> To be remembered; be it remembered. A formal word with which the body of a record in the Court of King's Bench anciently commenced.
>
> An informal record, note or instrument embodying something that the parties desire to fix in memory by the aid of written evidence, or that is to serve as the basis of a future formal contract or deed. A brief written statement outlining the terms of an agreement or transaction. Informal interoffice communication ...

[**5]

## II. SELF-CRITICAL ANALYSIS PRIVILEGE

Defendant asserts [HN1] the self-critical analysis privilege. n4 This privilege protects from discovery certain critical self-appraisals. The rationale for the doctrine is that such self-critical evaluation "fosters the compelling public interest in observance of the [*697] law." *Granger v. National R. R. Passenger Corp.*, 116 F.R.D. 507, 508 (E.D. Pa. 1987). [HN2] The Eleventh Circuit has yet to address the issue of whether such a privilege should be recognized, but the circuit courts of appeals presented with the question have refused to do so. *See Union Pacific Railroad Co. v. Mower*, 219 F.3d 1069 (9th Cir. 2000); *In re: Kaiser Aluminum and Chemical Co. v. United States Department of Labor*, 214 F.3d 586 (5th Cir. 2000) (declining to recognize the privilege where a government agency was seeking pre-accident documents); *see also Burden-Meeks v. Welch*, 319 F.3d 897 (7th Cir. 2003) (noting that the Seventh Circuit has yet to recognize the self-critical analysis privilege, but basing its decision on waiver); *FTC v. TRW, Inc.*, 202 U.S. App. D.C. 207, 628 F.2d 207, 210 (D.C. Cir. 1980) (rejecting privilege, [**6] but limiting holding to documents sought by government agencies); *Emerson Elec. Co. v. Schlesinger*, 609 F.2d 898, 907(8th Cir. 1979) (rejecting privilege based on fact that the employer's documents were being exchanged between EEOC and OFCCP).

n4 This privilege is also referred to as the "self-evaluation" or "self-evaluative" privilege.

*See In re Kaiser Aluminum and Chemical Co.*, 214 F.3d 586, 593 & n.20 (5th Cir. 2000).

The district courts are split on the issue. *Compare Reid v. Lockheed Martin Aeronautics Co.*, 199 F.R.D. 379 (N.D. Ga. 2001) (recognizing the self-critical analysis privilege in Title VII action); *Reichhold Chemicals, Inc. v. Textron, Inc.*, 157 F.R.D. 522 (N.D. Fla. 1994) (applying self-critical analysis privilege to records of landowner in CERCLA action); *Banks v. Lockheed-Georgia Co.*, 53 F.R.D. 283 (N.D. Ga. 1971) *with Johnson v. United Parcel Service, Inc.*, 206 F.R.D. 686 (M.D. Fla. 2002) (rejecting [**7] self-critical analysis privilege); *Abdallah v. The Coca-Cola Co.*, 2000 U.S. Dist. LEXIS 19966, 2000 WL 33249254 (N.D. Ga. 2000); *Cruz v. Coach Stores, Inc.*, 196 F.R.D. 228, 232 (S.D.N.Y. 2000) (expressing doubt as to whether the privilege should be recognized at all); *Aramburu v. Boeing Co.*, 885 F. Supp. 1434, 1440-41 (D. Kan. 1995) (concluding that the self-critical analysis privilege does not apply in Title VII cases); *Tharp v. Sivyer Steel Corp.*, 149 F.R.D. 177, 182 (S.D. Iowa 1993) (concluding that self-critical analysis privilege should not be recognized in employment discrimination litigation).

In the context of employment law, however, many federal district courts have rejected the privilege. *See Abdallah v. The Coca-Cola Co.*, 2000 U.S. Dist. LEXIS 19966, 2000 WL 33249254 at * 6 (collecting cases).

[HN3] Privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710, 94 S. Ct. 3090, 3108, 41 L. Ed. 2d 1039 (1974). The fundamental principle that "the public ... has a right to every man's evidence" leads to the conclusion that any asserted privilege [**8] must be "strictly construed." *Trammel v. United States*, 445 U.S. 40, 50, 100 S. Ct. 906, 912, 63 L. Ed. 2d 186 (1980). Although Federal Rule of Evidence 501 allows development of rules of privilege on a case-by-case basis, the court treads cautiously when being asked to recognize a new privilege. *See, e.g., University of Pennsylvania v. EEOC*, 493 U.S. 182, 110 S. Ct. 577, 107 L. Ed. 2d 571 (1990) (refusing to recognize common law privilege to protect peer-review materials contained in tenure files from disclosure).

Courts recognizing the self-critical analysis privilege have done so to encourage employers to undertake candid self-evaluations of their performance in the equal employment opportunity arena. *See, e.g., Reid v. Lockheed Martin Aeronautics Co.*, 199 F.R.D. 379 (N.D. Ga. 2001). Stated conversely, the rationale is not to

Case 4:04-cv-10137-FDS    Document 26    Filed 06/02/2005    Page 10 of 13

Page 5

218 F.R.D. 694, *; 2003 U.S. Dist. LEXIS 23248, **;
57 Fed. R. Serv. 3d (Callaghan) 108

create a chilling effect on a company's desire to engage in candid self-evaluation.

The policy arguments espoused in support of recognizing a self-critical analysis privilege in the employment context ring hollow in this post-Enron era where corporate governance is not only [**9] expected, but *en vogue*. Today, companies employ more compliance personnel than ever before for the very purpose of self-evaluating compliance with various state and federal laws. *See, e.g., Costs of Being Public Rise 90% Under Sarbanes-Oxley,* The Connecticut Law Tribune, Vol. 29, No. 37, October 2003, at S11 (noting Foley & Lardner study reflecting that compliance personnel increased 267% in late 2002 and early [*698] 2003). Failure to engage in self-critical analysis would be considered irresponsible by shareholders in today's environment. *See generally* Judith Burns, *Corporate Governance (A Special Report): Everything You Wanted to Know About Corporate Governance ... But didn't know to ask,* Wall Street Journal, Oct. 27, 2003, at R6. Cloaking self-evaluative materials in privilege would be contrary to this climate of corporate *glasnost.*

Further, recognizing a self-critical analysis privilege is questionable when one considers the possibility that, if a company engages in a self-critical analysis, and then does nothing as a result of damaging findings, highly relevant evidence of an employer's intent would be excluded from discovery and impede the public's important interest [**10] in enforcement of this nation's equal employment opportunity laws. Upon weighing the competing concerns, [HN4] the court declines the invitation to recognize a self-critical analysis privilege in the employment context.

Finally, even if the court were inclined to recognize such a privilege, the documents at issue would not qualify for protection from disclosure. [HN5] Courts recognizing the self-critical analysis privilege have established the following criteria: (1) the information must result from a critical self-analysis undertaken by the party seeking protection; (2) the public must have a strong interest in preserving the free flow of the type of information sought; (3) the information must be of the type whose flow would be curtailed if discovery were allowed; and (4) no document will be accorded a privilege unless it was prepared with the expectation that it would be kept confidential. *See Reid v. Lockheed Martin Aeronautics Co.,* 199 F.R.D. at 386 (citations omitted). Although defendant cites *Reid v. Lockheed Martin,* in support, n5 that case explains that the self-critical analysis privilege does not apply to objective factual or statistical information, but only protects [**11] "subjective analysis designed to have a positive societal effect." *Id.*

n5 *See* Defendant's Response to Plaintiff's Second Motion to Compel, P 5 at 4 (doc. no. 12).

As mentioned previously, the documents in question contain no subjective analysis. Although defendant claims in its affidavit that the documents were used for self-critical purposes to determine whether it was meeting its equal employment policy and accurately applying its Reduction in Force policy, nothing on the face of the document reveals a self-critical analysis. Instead, the documents merely provide facts, statistics, and rankings for each individual that purportedly were reviewed by persons engaging in a self-critical analysis. If a self-critical analysis exists, it is either in people's minds or on another piece of paper; it does not exist on pages Bates numbered PRIV 000001, PRIV 000002, or PRIV 000003.

### III. ATTORNEY-CLIENT PRIVILEGE

[HN6] "The purpose of the attorney-client privilege is to encourage open and complete communication [**12] between a client and his attorney by eliminating the possibility of subsequent compelled disclosure of their confidential communications." *United States v. Noriega,* 917 F.2d 1543, 1550 (11th Cir. 1990) (citation omitted). [HN7] The party invoking the attorney-client privilege has the burden of proving that it applies. *See Bogle v. McClure,* 332 F.3d 1347, 1358 (11th Cir. 2003).

[HN8] To support its claim of privilege, defendant must show the following:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Case 4:04-cv-10137-FDS   Document 26   Filed 06/02/2005   Page 11 of 13

Page 6

218 F.R.D. 694, *; 2003 U.S. Dist. LEXIS 23248, **;
57 Fed. R. Serv. 3d (Callaghan) 108

[*699] *United States v. Noriega*, 917 F.2d at 1550 (11th Cir. 1990) [**13] (quoting *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir.), *cert. denied*, 439 U.S. 829, 99 S. Ct. 105, 58 L. Ed. 2d 123 (1978) (quoting *In re Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir. 1975))).

[HN9] To determine if a particular communication is confidential and protected by the attorney-client privilege, defendant must prove the communication was "(1) intended to remain confidential *and* (2) under the circumstances was *reasonably* expected and understood to be confidential." *Bogle v. McClure*, 332 F.3d at 1358 (emphasis in original). An affidavit containing mere conclusory statements that a document was prepared for the purpose of obtaining legal advice will not suffice in meeting defendant's burden. *See In re Grand Jury Subpoena Dated January 4, 1984*, 750 F.2d 223, 225 (2d Cir. 1984). Mr. Garber's affidavit states that the documents were used for "the purpose of enabling myself and others in Human Resources to seek legal advice to determine what legal risks, if any, the company may face if it goes forward with the Reduction in Force decision, and whether the Reduction in Force decision [**14] could be regarded as unlawful in any respect." n6

---

n6 Exhibit 2 to Defendant's Response to Plaintiff's Second Motion to Compel.

---

Defendant's assertion of the attorney-client privilege fails for a number of reasons. First, the documents at issue contain no marking or notation evincing an intent that they are confidential or privileged. [HN10] While it is true that a mere stamp is insufficient to cloak an otherwise unprivileged document, *see Royal Surplus Lines Insurance Co. v. Sofamor Danek Group, Inc.*, 190 F.R.D. 505, 517 (W.D. Tenn. 1999), absence of such a designation cannot be overlooked by the court. Second, [HN11] the burden is upon the defendant to show that any attorney-client privilege has not been waived. *See United States v. Noriega*, 917 F.2d at 1550. Defendant has presented no evidence, and it is not self-evident from the face of the documents, who had access to them and whether any privilege was waived. *See Bogle*, 332 F.3d at 1358 & n. 9 (finding no attorney-client [**15] privilege where appellants "did not present evidence regarding who, if anyone, received the memoranda other than the stated recipients, what the stated recipients did with the memoranda once received, or whether the author and stated recipients understood the memoranda to be confidential"). The lack of any stamp indicating that the documents were confidential or privileged when created makes the potential for waiver even greater, and the absence of evidence on this issue more pertinent.

Third, and most importantly, [HN12] the attorney-client privilege does not protect the disclosure of the underlying facts by those who communicated with the attorney. *See Upjohn v. United States*, 449 U.S. 383, 395-96, 101 S. Ct. 677, 685-86, 66 L. Ed. 2d 584 (1981). Courts have noted that a party cannot conceal a fact merely by revealing it to his lawyer. *See id.*, at 396, 101 S. Ct. at 685-86 (collecting cases). The completed worksheet is a mere compilation of facts supporting a reduction in workforce decision that was ultimately reviewed by legal counsel. While a memorandum analyzing the legal risk of the proposed reduction in force would be privileged, *see, e.g., Motley v. Marathon Oil Co.*, 71 F.3d 1547 (10th Cir.1995), [**16] n7 the [*700] facts provided to counsel which support a business decision to engage in a workforce reduction are not protected.

---

n7 The *Motley* court also found no abuse of discretion in the district court's decision to protect as privileged multiple lists prepared at the request of counsel in order to provide legal advice about a corporate restructuring. 71 F.3d at 1550-51. This is not a situation where multiple lists were prepared for counsel to review and advise as to the best course to take on a potential workforce reduction. Mr. Garber's affidavit reflects that corporate counsel was reviewing the facts supporting a business decision to reduce workforce, for legal analysis after a decision was made but prior to implementation. [HN13] It is a sound practice and quite customary for companies to have counsel review a proposed reduction-in-force list prior to implementation. That practice does not cloak the facts supporting a reduction in force in attorney-client privilege. Whether to engage in a reduction in force is not a legal decision -- it is a business decision, which may have legal ramifications.

Finally, the *Motley* court's finding of no abuse of discretion is not the same thing as a finding that the same decision would have been made by the panel under a *de novo* standard of review.

---

[**17]

IV. ATTORNEY WORK PRODUCT DOCTRINE

[HN14] The work product doctrine, first established by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947), and now codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, provides qualified protection to "documents

Case 4:04-cv-10137-FDS    Document 26    Filed 06/02/2005    Page 12 of 13

Page 7

218 F.R.D. 694, *; 2003 U.S. Dist. LEXIS 23248, **;
57 Fed. R. Serv. 3d (Callaghan) 108

and tangible things ... prepared in anticipation of litigation or for trial" by or for a party, or by or for a party's representative. Fed. R. Civ. P. 26(b)(3). Documents that would have been prepared whether or not an attorney was sent a copy, are not protected from disclosure on the basis of attorney-client or work product privilege. *See United States Postal Service v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 163 (E.D.N.Y. 1994). [HN15] "The burden of establishing that a document is work product is on the party who asserts the claim." *Hodges, Grant & Kaufmann v. United States Government, Department of the Treasury, Internal Revenue Service*, 768 F.2d 719, 721 (5th Cir. 1985).

Courts differ on the standard triggering work product protection. One court has held [**18] that "litigation need not necessarily be imminent ... as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *United States v. Davis*, 636 F.2d 1028 (5th Cir.), n8 *cert. denied*, 454 U.S. 862, 102 S. Ct. 320, 70 L. Ed. 2d 162 (1981). If the court were to apply the "primary purpose" standard, defendant's assertion of the privilege would fail, in that defendant's equal employment manager provided two distinct purposes for the documents: (a) to seek legal advice and assess legal risk and (b) "to determine whether PPG is meeting its equal employment policy and accurately applying its Reduction in Force policy." n9 The court need not decide whether the "primary purpose" standard is the appropriate standard, because defendant's second stated reason for the documents provides further support to plaintiff's argument that these documents are prepared in the regular and ordinary course of business when a reduction in force is contemplated. One of defendant's stated purposes is to insure compliance with a company policy, a legitimate business purpose. Indeed, the blank sample worksheets -- documents [**19] designated as PRIV 000002 and PRIV 000003 -- appear to be guides that can be used in any reduction in force, and there is no indication that these documents were prepared in anticipation of litigation.

n8 In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981. One court has noted, however, tension between *Davis* and a prior Fifth Circuit decision, *Hoover v. United States Department of Interior*, 611 F.2d 1132 (5th Cir. 1980), which did not apply a "primary purpose" standard. *See United States v. Gericare Medical Supply Inc.*, 2000 U.S. Dist. LEXIS 19662, 2000 WL 33156442 (S.D. Ala. 2000).

n9 Defendant's Response to Plaintiff's Second Motion to Compel, Exhibit 2 (doc. no. 12).

The only case cited by defendant where a reduction in force worksheet was deemed protected as attorney work product, *Maloney v. Sisters of Charity Hospital of Buffalo, New York*, 165 F.R.D. 26 (W.D.N.Y. 1995), [**20] is easily distinguishable. In *Maloney*, counsel had sufficiently articulated his reasonable belief, formulated at the time the documents were prepared, and based on his experience in the area of employment and labor law, that the large scale reduction in force proposed by defendant would likely result in litigation. *Id.* at 30. No such evidence exists in this case. There is no indication whether this reduction in force was unusual or whether defendant has a history of litigation that stems from past workforce reductions. There is no indication from the face of these documents that they were prepared at the request of counsel in anticipation of litigation, or that there was ever an expectation that they would be considered confidential and/or privileged. The absence of evidence [*701] inures to plaintiff's benefit, as the burden is on defendant to show the material is work product. Defendant's assertion of protection under the work product doctrine is due to be overruled.

### V. CONCLUSION

Plaintiff's second motion to compel shall be granted. Defendant shall be compelled by an appropriate order entered contemporaneously here with to disclose the documents Bates stamped [**21] PRIV 0001-0003, and listed on defendant's Privilege Log, to counsel for plaintiff on or before Friday November 7, 2003.

DONE this 31st day of October, 2003.

Lynwood Smith

United States District Judge

### ORDER

This action is before the court upon plaintiff's second motion to compel (doc. no. 10). In accordance with the memorandum opinion entered contemporaneously herewith, plaintiff's second motion to compel is GRANTED.

Defendant is ORDERED to disclose the documents Bates stamped PRIV 0001-0003 and listed on defendant's Privilege Log to counsel for plaintiff on or before close of business on Friday, November 7, 2003.

DONE this 31st day of October, 2003.

Page 8

218 F.R.D. 694, *; 2003 U.S. Dist. LEXIS 23248, **;
57 Fed. R. Serv. 3d (Callaghan) 108

| Lynwood Smith | EXHIBIT |
| United States District Judge | 1 |
| ATTACHMENT | |

### GEORGE FREIERMUTH PRIVILEGE LOG
Last Updated: September 24, 2003

| DATE | AUTHOR | RECIPIENT(S) | PRESENT CUSTODIAN | LOCATION OF ORIGINAL | SUBJECT MATTER | BASIS FOR WITHHOLDING |
|---|---|---|---|---|---|---|
| 3-31-02 | Peter Garber | | Burr & Forman LLP | PPG Industries Pittsburgh PA | Memo | Work-product self-critical Attorney-Client Privilege |

[**22]