UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM AYERS,<br>      Plaintiff,<br>vs.<br><br>C.P. BOURG, INC.,<br>      Defendant, | CIVIL ACTION<br>NO. 04-10137-FDS |

**ORDER**
**September 20, 2005**

SWARTWOOD, C.M.J.

Nature of the Proceeding

On July 7, 2005, the following non-dispositive motion was referred to me for disposition:

1. Plaintiff's Motion to Compel (Docket No. 24).

Background

This is an employment discrimination action brought by Plaintiff William Ayers ("Mr. Ayers" or "Plaintiff") seeking equitable relief, compensatory and liquidated damages against C.P. Bourg, Inc. ("CP Bourg" or "Defendant") under the Age Discrimination in Employment Act ("ADEA") and for compensatory and treble damages under the Massachusetts laws prohibiting untimely and non-payment of wages. Mr. Ayers alleges that he was subjected to discriminatory actions and omissions by the defendant, including discriminatory termination based upon his age and denial of commissions. CP Bourg, a manufacturer and distributor of post-

press binding and finishing equipment, contends that Mr. Ayers was laid off as a result of company-wide reduction in force, which consisted of a series of restructurings, layoffs and non-replacement of vacated positions over a period of two years.

On April 6, 2005 and April 15, 2005, plaintiff took depositions of various current and former corporate officers, including Richard Trapilo, CP Bourg's Executive Vice President and James Tressler, Mr. Ayers' immediate supervisor. Mr. Trapilo testified that he approved Mr. Ayers' termination and participated in the decision not to pay Mr. Ayers' full commission on a sale following his termination. During the depositions, Mr. Ayers sought information about the circumstances surrounding his lay off and the decision not to pay him the full commission. Because the deponents claimed that all of those communications were with or in the presence of William Hagan, Vice President and General Counsel at CP Bourg, defendant's counsel instructed the deponents not to answer those questions and claimed that the communications were subject to the attorney-client privilege.

William Hagan served as Vice President and General Counsel at CP Bourg during the years of Mr. Ayers' employment. Mr. Hagan's duties included providing legal advice to CP Bourg on a wide variety of business areas but was also responsible for the management of human resources and personnel functions at the company. Mr. Hagan's business functions included a myriad of human

resource areas including the administration of salaries, health, life and disability insurance, sick and vacation benefits and performance issues. Personnel files were kept in his office. Mr. Hagan reviewed employee performance appraisals and was responsible for overseeing payment of wages and commissions. Mr. Hagan was consulted concerning the company restructuring at the time the plaintiff was laid-off.

Plaintiff has filed this motion to compel Messrs. Trapilo and Tressler and Mr. Hagan to testify about the circumstances relating to the decision not to pay him money allegedly owed to him in commissions and the decision to terminate his employment. Plaintiff contends that because Mr. Hagan was acting in his human resource capacity and not as a lawyer during the conversations at issue, the defendant is not entitled to invoke the attorney-client privilege. Defendant argues that communications with Mr. Hagan on the issues of commissions allegedly owed to the plaintiff and the company wide lay-offs are protected by the attorney-client privilege because they consisted of consultation for the purposes of obtaining legal advice.

Mr. Ayers was hired by CP Bourg in 1994 as a sales representative and was promoted several times during the course of his employment. CP Bourg promoted Mr. Ayers to New England Branch Manager in 1996 and later to Director of Branch Operations. On or around October 2001, Mr. Ayers resumed his prior position as Branch

Manager. In January 2002, Mr. Ayers accepted the position of Digital Account Specialist and reported to James Tressler. Mr. Ayers remained in this position until he was laid off on October 24, 2002 at the age of 63. On November 26, 2002, CP Bourg notified Mr. Ayers that he would receive one-third of a commission from a sale to Vermont Life of America that was dated October 31, 2002, a percentage which company officials determined reflected Mr. Ayers involvement in the account prior to his termination.

## Discussion

The attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn Co. v. United States, 449 U.S. 383, 390, 101 S. Ct. 677 (1981). Communications between corporate counsel and company personnel are privileged so long as the information is relayed for the purpose of obtaining legal advice. Id. at 394-395. In essence, communications by employees to counsel acting at the direction of corporate superiors to secure legal advice are protected by the privilege. Id. at 390. The scope of the privilege is fact sensitive and must be addressed on a case-by-case basis. Id. at 396-97. It is undisputed that the party asserting the attorney-client privilege bears the burden of demonstrating its applicability. See, e.g., Town of Norfolk v. U.S. Army Corps of Engineers, 968 F.2d 1438, 1457 (1st Cir., 1992);

U.S. v. Bay State Ambulance, 874 F.2d 20, 27-8 (1st Cir., 1989); Winchester Capital Management v. Manufacturers Hanover, 144 F.R.D. 170, 174 (D. Mass., 1992).

The attorney-client privilege does not attach when in-house counsel is engaged in nonlegal work. Borase v. M/A Com, Inc., 171 F.R.D. 10, 12 (D.Mass. 1997) (internal citations omitted). Such nonlegal work would include the rendering of business or technical advice unrelated to legal issues. Id. at 13. While legal advice provided in the context of business negotiations is protected under the attorney-client privilege, business information provided in the context of business negotiations does not acquire protection under the privilege merely because it has been provided by an attorney. FC Cycles Int'l. v. FILA Sport, 184 F.R.D. 64, 71 (D.Md. 1998). It is the content of the communication that determines whether the privilege applies. Id.

However, "client communications intended to keep the attorney apprised of business matters may be privileged if they embody 'an implied request for legal advice based thereon.'" Simon v. G.D. Searle & Co., 816 F.2d 397, 404 (8th Cir., 1987), cert. denied, 484 U.S. 917, 108 S. Ct. 268 (1987), quoting from Jack Winter, Inc. v. Koratron Co., 54 F.R.D. 44, 46 (N.D. Cal., 1971). "The attorney-client privilege attaches only when the attorney acts in that capacity." Texaco Puerto Rico v. Department of Consumer Affairs, 60 F.3d 867, 884 (1st Cir. 1995).

Since Mr. Hagan had significant nonlegal responsibilities during his tenure at CP Bourg, CP Bourg has the burden of producing evidence in support of its contention that Mr. Hagan was engaged in giving legal advice and not in some other capacity at the time of the disputed conversations.  See Jack Winter, Inc., 54 F.R.D. at 46.  Merely stating that he was so acting in a memorandum of law is insufficient to meet that burden.  Borase v. M/A Com, Inc., 171 F.R.D. at 14.  After review of the parties arguments, I find that CP Bourg has not met the burden of showing that legal advice was being sought or rendered during the disputed discussions with Mr. Hagan.

Mr. Trapilo testified that Mr. Hagan routinely consulted with CP Bourg supervisors and managers concerning employee personnel issues, including oversight of wages and commissions.  During a line of questioning at his deposition concerning Mr. Hagan's business responsibilities at CP Bourg, Mr. Trapilo testified that Mr. Hagan would "review the appropriate commission plan with the manager and comment on it and make sure that company (sic) was paying the appropriate commission amount."  See Plaintiff's Memorandum fo Law in Support of Motion to Compel (Docket No. 25) ("Pls. Mot."), Ex. 3, Excerpts of Deposition of Richard F. Trapilo ("Trapilo Dep."), p. 150.  Similarly, although Mr. Trapilo testified that it was his decision whether to restructure the company and subsequently issue lay-offs, he would not answer any

questions regarding this issue solely because he discussed the matter with Mr. Hagan. As it appears on the record before me, Mr. Hagan could well have been acting in his ordinary business role when discussing the alleged lay-off of Mr. Ayers or the question of whether he was owed commission.

The Defendant argues that the only assertion of privilege concerns the questions that encompass Messrs. Tressler and Trapilo's communications with Mr. Hagan on the topics of the decision to lay off Mr. Ayers and Mr. Ayers' expected commission. However a reading of the excerpts from Messrs. Tressler and Trapilo's depositions, provided as exhibits to the Plaintiff's motion, shows that the deponents basically refused to answer questions on any topic if they had at any time discussed that topic with Mr. Hagan. Other than simply asserting in its memorandum that the communications at issue were concerning non-routine matters and for the purpose of securing legal advice, CP Bourg has offered nothing to show that the communications between Messrs. Tressler and Trapilo were anything other than routine business matters. While it is common, and possible, for personnel matters to develop into matters that require the advice of counsel, the Court finds that the record does not support that conclusion.

Accordingly, I find that CP Bourg has failed to carry its burden of demonstrating that legal advice was being offered or sought in the discussions between Mr. Tressler, Mr. Trapilo and

Mr. Hagan concerning Mr. Ayers' lay-off and the decision of whether to pay Mr. Ayers a full commission.

### Conclusion

1. Plaintiffs Motion to Compel (Docket No. 24) is <u>allowed</u>. CP Bourg is ordered to produce Messrs. Trapilo and Tressler for further deposition testimony consistent with this Order.

/s/Charles B. Swartwood, III
CHARLES B. SWARTWOOD, III
CHIEF MAGISTRATE JUDGE